

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. O. E. McCormick, Director
Bonding & Licensing Division,
Department of Agriculture
P. O. Box 111
Harlingen, Texas

Dear Sir:

> Opinion No. O-1734
> Re: Is the Commissioner of Agriculture requir-
> ed under Art. 118b, Vernon's Annotated
> Civil Statutes (H.B. 99, Acts 45th Leg.,
> amended by S.B. 24 & H.B. 78, Acts 45th
> Leg., and H.B. 943, Acts 46th Leg.), to
> issue a buying agent's identification
> card to an individual who has his dealer's
> license cancelled or revoked and who is
> indebted to numerous citrus producers
> for approximately $7,000 worth of citrus
> fruit, purchased last season and which
> amount is still unpaid?

We are in receipt of your request for an opinion of this department on the following question:

"Is the Commissioner of Agriculture requir-
ed under the above mentioned Act (Art. 118b, Ver-
non's Annotated Civil Statutes--H.B. 99, Acts
45th Leg., amended by S.B. 24 & H.B. 78, Acts 45th
Leg., and H.B. 943, Acts 46th Leg.), to issue a
buying agent's identification card to an indivi-
dual who has his dealer's license cancelled or
revoked and who is indebted to numerous citrus
producers for approximately $7,000 worth of
citrus fruit, purchased last season and which
amount is still unpaid?" (Parenthetical inser-
tion ours.)

Section 1 (f) of Article 118b, Vernon's Annotated
Civil Statutes, defines a "buying agent" as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"(f) 'Buying agent' shall mean any person authorized by any licensed dealer to act for him in the handling of citrus fruit as defined in (d) of this Section."

The word "handle" means, according to Section 1 (d) of Article 118b, supra, "buying or offering to buy, selling or offering to sell, or shipping for the purpose of selling, whether as owner, agent or otherwise, any citrus fruit within the State of Texas, and persons buying and/or shipping citrus fruit for canning and/or processing or handlers, as the term is defined."

Section 12 of Article 118b, supra, provides, among other things, that:

"Upon application to the Commissioner by any licensed dealer, a reasonable number of 'buying agent' and 'transporting agent' identification cards may be issued and accredited to such dealer, under such rules and regulations as said Commissioner may prescribe, and said Commissioner is hereby empowered to charge a fee not to exceed One Dollar ($1) for each card so issued:

"(a) Such cards shall bear the name of the licensee, dealer, and the number of his license, also the name of the dealer's agent, and shall state thereon that said licensed dealer, as the principal, has authorized the agent named on the card, the holder thereof, to act for and on behalf of said principal, either as 'buying agent' or as 'transporting agent' as above defined. 'Buying agent' identification cards shall be of a different color from 'transporting agent' cards. Such identification cards shall be at all times carried upon the persons of such agents who shall, upon demand, display such cards to the Commissioner or his agents or representatives, or to any person with whom said agent may be transacting business under this Act.

"(b) If and when the holder of any identification card ceases to be the agent of the dealer by whom he was employed, it shall be the duty of said agent to return immediately such agent's card to the Commissioner for cancellation and failure to do so shall constitute a violation of this Act."

Section 4 of Article 118b, supra, prescribes the fee for "a license as a 'buying agent'" as follows:

"(a) (4)  For a license as a 'buying agent,' the sum of One Dollar ($1.)."

It would appear that the "buying agent" license, as named in Section 4 of Article 118b, supra, is identical with the "buying agent" identification card provided for in Section 12.  They are one and the same, and are subject to all the license requirements of the Act.

Section 4 of Article 118b, supra, contains in part the following provisions:

"All applications for license under this Act shall be accompanied by a tender of payment in full of the fee for such license required; on receipt of said application duly executed, together with required fee, it shall be the duty of the Commissioner or his agents and/or employees thereunto duly authorized to immediately issue such license, provided that no license shall issue to any person when the application for license filed by such person shall indicate that such person is a suspended licensee within the State of Texas, or that such person's license to do business in Texas has been revoked until the Commissioner is furnished with satisfactory proof that the applicant is, on the date of the filing of such application, qualified to receive the license applied for; the issuance of license to persons who have suffered prior suspension or revocation of license in this State shall be discretionary with the Commissioner; in the exercise of such discretion, the Commissioner is authorized to take into consideration the facts and circumstances pertaining to the prior suspension and/or revocation; the financial condition of the applicant, as of the date of this application, and the obligations due and owing by the applicant to growers and producers of citrus fruits and/or perishable agricultural commodities; 'obligation,' as the term is used in this Section, shall be construed to mean any judgment of any Court within this State outstanding against the applicant

or certified claims as of the date of the application under consideration by the Commissioner; prior to refusal of license by the Commissioner, any applicant for license shall be entitled to an open hearing on the facts pertaining to such application, said hearing to be conducted by the Commissioner, or his agent thereunto duly authorized; if, after such hearing, the Commissioner, in the exercise of his discretion, refuses the license applied for, the applicant shall, within ten (10) days from and after the denial of such license by the Commissioner and not thereafter, file his appeal from the order of the Commissioner denying such license, in any Court of competent jurisdiction within this State; if the Commissioner shall determine that the license applied for shall not be granted, the Commissioner shall deduct from the license fee tendered with such application, the sum of Five Dollars ($5), said Five Dollars ($5) to be retained by the Commissioner to defray costs and expenses incident to the filing and examination of said application and shall return the balance of the license fee so tendered with such application to the applicant."

It is our opinion that the provisions of Section 4 above quoted were intended by the Legislature to govern in the case of all types of licenses issued under the Act and later set out in the same section: "dealer's" license; "commission merchant's" and/or "contract dealer's" license; "minimum cash dealer's" license; "buying agent's" license (identification card); "transporting agent's" license (identification card).

The issuance of any license provided for under the Act to persons who held any of the licenses previously, and who had suffered prior suspension or revocation of license, has been declared a matter of discretion with the Commissioner of Agriculture. It would not be consistent to maintain that the Commissioner's discretion was limited to one type of license, i.e., the dealer's license. The purpose of Section 4, which is undoubtedly to eliminate insofar as possible unreliable, unscrupulous and defrauding licensees under the Act, would be circumvented entirely if the Commissioner was powerless to deny a different type of license under the

Act to a person whose previous license had been suspended or revoked. The soundest construction to place upon Section 4 is that the authority and discretion of the Commissioner in issuing any license under the Act to a person whose former license was revoked or suspended embraces all the types of licenses issued. This will effectively close the door to the subterfuge of operating under a different type of license when a prior license is revoked or suspended.

Furthermore, as is provided in Section 4, in the exercise of his discretion in such a matter, the Commissioner may take into consideration, among other things, "the obligations due and owing by the applicant to growers and producers of citrus fruits and/or perishable agricultural commodities."

In the present instance, the applicant for a "buying agent" license or identification card is still indebted for approximately $7,000 worth of citrus fruit which he purchased as a dealer during a previous season. In passing upon this application, it was clearly the intention of the Legislature that the Commissioner of Agriculture take this fact into consideration before issuing the party concerned not only another dealer's license, but any kind of license.

Section 14 gives the Commissioner of Agriculture full power and authority to enforce the provisions of the Act. It reads as follows:

"For the purpose of enforcing the provisions of this Act, the Commissioner is hereby vested with full power and authority and it shall be his duty, either upon his own initiative or upon the receipt of a properly verified complaint, to investigate all alleged violations of this Act and for the purpose of making such investigation, he shall have, at all times, free and unimpeded access to all books, records, buildings, yards, warehouses, storage, and transportation and other facilities or places in which any citrus fruit is kept, stored, handled, processed or transported, and in furtherance of such investigation either the Commissioner in person or through his authorized representatives, may examine any portion of the

ledger, books, accounts, memorandum, documents, scales, measures, and other matters, objects or persons pertinent to such alleged violation under investigation. The Commissioner shall take such action and hold such public hearings as in his judgment are shown to be necessary after such investigations, and shall take the proper action with reference to the cancellation or suspension of the license of any dealer hereunder shown to have been guilty of a violation of the terms of this Act. Such hearings shall be held in the nearest city or town in the county where violations are alleged to have occurred. Any order made by the Commissioner with reference to the revocation or cancellation of any license granted under the provisions of this Act, shall be subject to review by a Court of competent jurisdiction."

After a careful consideration of the above quoted sections of the Citrus Fruit Growers Act in the light of its objectives and the abuses it was intended to eradicate, it is our opinion, and you are so advised that under the terms and provisions of Article 118b, Vernon's Annotated Civil Statutes, the Commissioner of Agriculture is not required to issue a buying agent's identification card to an individual who has had his dealer's license cancelled or revoked and who is indebted to numerous citrus producers for approximately $7,000 worth of citrus fruit, purchased last season and which amount is still unpaid; but under Sections 4 and 12 of Article 118b, the Commissioner of Agriculture has the authority to use his discretion in issuing a license in such a case and to prescribe rules and regulations applicable to the situation.

Trusting that we have fully and satisfactorily answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Dick Stout
Assistant

APPROVED DEC 21, 1939

D3:pbp

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN